UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID LAYTON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TERREMARK NORTH AMERICA, LLC and<br>VERIZON ENTERPRISE SOLUTIONS, LLC,<br><br>　　　　　Defendants. | Case No. 5:13-cv-03093-PSG<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS SECOND<br>AMENDED COMPLAI NT**<br><br>**(Re: Docket No. 36)** |

Before the court is Defendants Terremark North America and Verizon Enterprise Solutions' motion to dismiss Plaintiff David Layton's Second Amended Complaint for failure to state a claim. Layton opposes. The parties appeared for a hearing on the matter. Having considered the arguments and the parties' pleadings, Defendants' motion is DENIED.

**I. BACKGROUND**

Layton worked for Defendants in the data management field for over ten years, receiving positive performance reviews and promotions.[1] Layton alleges Defendants misrepresented to their clients the capacity of their data centers, resulting in the overselling the power available to the

---

[1] *See* Docket No. 35 at ¶¶ 11, 48.

1
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT

client by as much as 130 percent to 400 percent.[2] Defendants' internal policy was that oversell was not to exceed 130 percent sold, but the industry standard was only to oversell a facility by 120 percent.[3] During the time of Layton's employment, Defendants' data center experienced numerous power failures due to an overload of power.[4]

Layton disapproved of this practice and believed it was unlawful.[5] He frequently complained to upper management and urged management to be more transparent with customers.[6] When at least one customer complained of power failure, Layton was told not to talk with the customer and was isolated from the customer's account.[7] Defendants frequently prevented Layton from speaking to customers, including government agency customers.[8]

On December 17, 2012, Layton was fired.[9] In a letter to Layton, Defendants' Vice-President of Platform Operations accused Layton of failing to protect Verizon's tangible and intangible property, failing to handle company funds responsibly, and failing to be honest and forthcoming in a company investigation.[10] The letter also was shared with at least seven other of Defendants' employees.[11] In his operative complaint, Layton alleges (1) retaliation, (2) wrongful

---

[2] *See id.* at ¶ 17.

[3] *See id.* at ¶¶ 16, 17.

[4] *See id.* at ¶ 13.

[5] *See id.* at ¶¶ 18, 19, 31.

[6] *See id.* at ¶¶ 15, 19

[7] *See id.* at ¶ 15.

[8] *See id.* at ¶ 38.

[9] *See id.* at ¶ 39.

[10] *See id.* at ¶ 46.

[11] *See id.* at ¶ 47.

2
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

termination in violation of public policy, (3) defamation and (4) recovery pursuant to the Private Attorneys General Act.[12]

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[13]  When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[14]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[16]  Dismissal without leave to amend is appropriate only if it is clear that the complaint could not be saved by amendment.[17]

For the purposes of Defendants' Rule 12 motion, the court accepts all material allegations in the complaint as true and construes them in the light most favorable to Layton.[18]  The court's review is "limited to the complaint, materials incorporated into the complaint by reference, and

---

[12] *See id.*

[13] Fed. R. Civ. P. 8(a)(2).

[14] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[15] *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).

[16] *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

[17] *See Eminence Capital, LLC v. Asopeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[18] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) ("The court 'accept[s] the plaintiffs' allegations as true and construe[s] them in the light most favorable to plaintiffs.'" (*quoting Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002))).

3
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

matters of which the court may take judicial notice."[19]  The court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[20]

### III. DISCUSSION

**A.     Retaliation Claim – Violation of California Whistleblower Protection Act**

Layton alleges Defendants retaliated against him because of his refusal to participate in illegal activities, which is a violation of California Labor Code § 1102.5.[21]

Defendants move to dismiss the claim on the ground that (1) Layton has not exhausted his administrative remedy under California Labor Code § 98.7, and (2) that Layton fails to plead a claim under Section 1102.5.  As discussed below, the court finds that Layton's failure to exhaust his administrative remedy under Section 98.7 does not bar his Section 1102.5 claim.  Layton successfully pleads a claim under Section 1102.5(a), but fails to plead a claim under Section 1102.5(c).

**1.     Layton Need Not Exhaust His Administrative Remedy Under Section 98.7**

California Labor Code § 98.7(a) provides, in relevant part: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months

---

[19] *Id.*

[20] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable" inferences); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561(2007) (holding "a wholly conclusory statement" of a claim will not survive a motion to dismiss).

[21] *See* Docket No. 35 at 12.  An amended version of Cal. Lab. Code § 1102.5 came into effect January 1, 2014.  However, because the conduct at issue occurred before this date, the prior version controls those of Layton's claims based on the substantive portion of this statute.  *See Brenton v. Metabolife Int'l, Inc.*, 116 Cal. App. 4th 679, 688-89 (2004) (citing *Tapia v. Superior Court,* 53 Cal. 3d 282 at 288, 279 (1991)); *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994)) ("[I]f a statutory change is *substantive* because it would impose new, additional or different liabilities based on past conduct, courts are loath to interpret it as having retrospective application."); *McClung v. Employment Dev. Dep't*, 34 Cal. 4th 467, 474 (2004) ("The amended statute defines the law for the future, but it cannot define the law for the past." (citing *People v. Cuevas,* 111 Cal. App. 3d 189, 200 (Ct. App. 1980))).

4
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

after the occurrence of the violation." Before 2014, courts disagreed as to whether this language required a plaintiff to file a complaint with the California Labor Commissioner before bringing suit for violations of the California Labor Code.

In 2005, the California Supreme Court held that a plaintiff's claim for retaliatory discharge under Section 1102.5 was properly dismissed on demur because the plaintiff failed to exhaust the defendant's internal complaint resolution process.[22] Because university policy required employees to resort initially to internal grievance practices and procedures, university employees had an administrative remedy that they were required to exhaust before suing under California Labor Code § 1102.5.[23]

While *Campbell* did not address Section 98.7 specifically, a number of federal district courts extended *Campbell* to require a plaintiff to file a complaint with the Labor Commissioner under § 98.7(a) as a prerequisite to filing a lawsuit alleging a Section 1102.5 violation.[24] A number of other courts, however, reached the opposite conclusion, finding that *Campbell* did not resolve the application of § 98.7 and finding that because the language of § 98.7 is permissive, it does not itself require exhaustion.[25]

The only post–*Campbell* published opinion by the California Court of Appeals on this

---

[22] *Campbell v. Regents of Univ. of California,* 35 Cal. 4th 311, 319 (2005).

[23] *Id.* at 317, 324.

[24] *See Melgar v. CSK Auto, Inc.,* No. 13-cv-3769-EMC, 2014 WL 546915, *2 (N.D. Cal. Feb. 7, 2014) ("The majority of federal district courts to address this question have held that a plaintiff must file a complaint with the Labor Commissioner under section 98.7(a) before filing a lawsuit alleging a violation under Labor Code sections 98.6 or 1102.5."); *See also Miller v. Sw. Airlines, Co.,* 923 F.Supp. 2d 1206, 1210 (N.D. Cal. 2013); *Ferretti v. Pfizer Inc.,* 855 F.Supp. 2d 1017, 1023 (N.D. Cal. 2013).

[25] *See e.g. Melgar v. CSK Auto, Inc.*, Case No. 3:13-cv-3769-EMC, 2014 WL 546915, at *2 (N.D. Cal. Feb. 7, 2014); *Dowell v. Contra Costa Cnty.,* Case No. 3:12-cv-05743-JCS, 928 F.Supp. 2d 1137, 1153 (N.D. Cal. 2013); *Turner v. City and Cnty. of S.F.,* Case No. 3:11-cv-1427, 892 F.Supp. 2d 1188, 1200 (N.D. Cal. 2012) (reconsideration denied).

question, *Lloyd v. Cnty. of L.A.*,[26] held that administrative remedy exhaustion is not required and that § 98.7 "merely provides the employee with an additional remedy, which the employee may choose to pursue."

Recently, the California legislature clarified this issue. It adopted California Labor Code § 244, which became effective January 1, 2014. Section 244(a) makes it clear that a plaintiff seeking to enforce his rights under any section of the Labor Code need *not* exhaust administrative remedies prior to bringing suit if that section does not expressly require it.[27] The legislative history of Section 244 suggests the legislature did not intend to amend the current state of the law, but rather sought to "clarify [ ] that an employee or job applicant is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of the Labor Code."[28]

In addition, the legislature adopted California Labor Code § 98.7(g), also effective as of January 1, 2014. Section 98.7(g) clarifies that in the enforcement of the section, "there is no requirement that an individual exhaust administrative remedies or procedures."[29]

In light of these legislative changes, district courts have since revisited this issue and have held that a plaintiff filing suit for violations of the Labor Code need not exhaust administrative remedies by filing a complaint with the California Labor Commissioner before filing a complaint

---

[26] 172 Cal. App. 4th 320, 331-32 (2009).

[27] Cal. Labor Code § 244(a) ("An individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy.").

[28] *Gonzalez v. City of McFarland*, Case No. 1:13-cv-00086-JLT, 2014 WL 294581, at *2 (E.D. Cal. Jan. 24, 2014) (quoting SB 666, the California State Senate bill which enacted § 244).

[29] Cal. Labor Code § 98.7(g).

6
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

in federal court.[30]  Section 244(a) can be applied retroactively because the revision merely clarified existing law and did not amend or change it.[31]  This court finds these cases persuasive.  Layton need not exhaust administrative remedies before pursuing his claim in this court for a violation of the California Labor Code.

### 2.  Layton's Claims Under Sections 1102.5(a) and 1102.5(c)

Layton's complaint does not clearly specify which subsection of Section 1102.5 Layton is claiming Defendants violated.  However, in view of the fact that Layton does allege that Defendants' conduct prevented disclosure, the court construes Layton's Second Cause of Action as a retaliation claim under § 1102.5(a).[32]  Because Layton also alleges in the complaint that Defendants retaliated against him because he refused to participate in unlawful activity, the Court also construes Layton's Second Cause of Action as a retaliation claim under Section 1102.5(c).[33]

---

[30] *See e.g. Couch v. Morgan Stanley & Co., Inc.*, Case No. 1:14–cv–0010-LJO-JLT, 2014 WL 1577463 (E.D. Cal. Apr. 18, 2014); *Stone v. Walgreen Co.*, Case No. 13-cv-2838-W(DHB), 2014 WL 1289470, at *4 (S.D. Cal. Mar. 26, 2014); *Howard v. Contra Costa Cnty.,* Case No. 4:13-cv-03626-NC, 2014 WL 824218, at *17 (N.D. Cal. Feb. 28, 2014); *Melgar v. CSK Auto, Inc.,* Case No. 3:13-cv-03769, 2014 WL 546915, at *4 (N.D. Cal. Feb.7, 2014); 1:13-cv-00086-JLT, *Gonzalez v. City of McFarland*, Case No. 1:13-cv-00086-JLT, 2014 WL 294581, at *2 (E.D. Cal. Jan. 24, 2014).

[31] *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively." (citing *United States v. Donaghe,* 50 F.3d 608, 612 (9th Cir. 1994))).

[32] *See* Docket No. 35 at ¶ 38; *Germany v. Ryder Dedicated Logistics*, Case No. 3:94-cv-1969-TEH, 1995 WL 506999, at *3 (N.D. Cal. Aug. 17, 1995) (construing Plaintiff's First Cause of Action as a retaliation claim under Section 1102.5(a) because plaintiff alleged in the Complaint that Defendant's conduct *prevented* disclosure).  The version of Section 1102.5(a) in effect from January 1, 2004 to December 31, 2013 provides: "An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(a) (2004) (amended 2014).

[33] *See* Docket No. 35 at ¶ 40.  The version of Cal. Lab. Code § 1102.5(c) in effect from January 1, 2004 to December 31, 2013 provides: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(c) (2004) (amended 2014).

7
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

"To establish a prima facie case for retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two."[34] Protected activity is disclosure of or opposition to "a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."[35] As such, to state a claim, Layton must be able to identify a specific state or federal statute, rule, or regulation which he believed Defendants were violating.[36]

Layton has alleged sufficient facts to establish a prima facie case for retaliation. First, Layton alleges he was engaged in the protected activity of opposing Defendants' practices of oversubscribing above industry standards, which Layton alleges violates Cal. Civ. Code § 1709.[37] Second, Layton alleges Defendants subjected him to an adverse employment action and this termination was due to his refusal to engage in what he believed was unlawfully representing the capacity of data centers.[38]

### i.        Layton Fails to Plead a Claim Under Section 1102.5(a)

Defendants argue Layton fails to plead a claim under Section 1102.5(a) because he was not prevented from disclosing the activity to a government agency.[39] Layton alleges he was prevented

---

[34] *Brown v. Brotman Med. Ctr., Inc.*, Case No. 12-56905, 2014 WL 1647382, at *1 (9th Cir. Apr. 25, 2014) (internal citations and quotations omitted); *see also Steffens v. Regus Grp., PLC*, 485 F. App'x 187, 188 (9th Cir. 2012).

[35] *Prem v. Access Servs., Inc.*, Case No. 11-cv-01358-ODW-JEMX, 2011 WL 1519243, at *3 (C.D. Cal. Apr. 20, 2011); Cal. Labor Code § 1102.5(b).

[36] *Id.* (citing *Carter v. Escondido Union High Sch. Dist.,* 148 Cal. App. 4th 922, 933 (Ct. App. 2007)).

[37] *See* Docket No. 35 at ¶¶ 5, 18, and 25.

[38] *See* Docket No. 35 at ¶ 31.

[39] *See* Docket No. 37 at 9. Although Defendants make this argument with respect to Section 1102.5(b), the same argument applies to Section 1102.5(a) because it has exactly the same language regarding disclosure to government authorities.

8
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

from disclosing to all customers, some of which were government entities.[40] There is an important difference, however, between the government's role as a regulatory agency and as a customer.[41] Because this statute addresses disclosing violations of laws to the government, it refers to the government in its role as a regulator, not as a market participant.  Layton does not allege he was prevented from disclosing Defendants' practices to a regulatory agency of the government.  Layton thus fails to allege facts sufficient to support a claim under Section 1102.5(a).

### ii.     Layton Successfully Pleads a Claim Under Section 1102.5(c)

Under Section 1102.5(c) of the California Labor Code, "an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."[42]  Defendants argue Layton fails to plead a claim under Section 1102.5(c) because the complaint does not identify some violation of state or federal statute to give rise to this liability.[43]

Layton, however, alleges underlying unlawful activity of fraudulent misrepresentation to Defendants' customers and oversubscribing data centers beyond industry standards,[44] in violation of Cal. Civ. Code §§ 1709 and 1710.[45]  One kind of fraud defined by these statutes is commonly

---

[40] *See* Docket No. 35 at ¶ 38.

[41] Courts have recognized this duel role of the government in other contexts. *See generally Reeves, Inc. v. Stake*, 447 U.S. 429, 436-37 (1980) (holding that when a state is acting in the role as a market participant, it may permissibly discriminate against non-residents); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 809 (1976) (concluding that the Commerce Clause was not intended to require independent justification because the state was participating in the market, rather than acting as a market regulator).

[42] Cal. Lab. Code § 1102.5 (amended 2014).

[43] *See* Docket No. 37 at 10.

[44] *See* Docket No. 35 at ¶¶ 5, 14, and 18.

[45] *See* Docket No. 35 at ¶¶ 25, 26.

9
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

called 'intentional misrepresentation', which is "the suggestion, as a fact, of that which is not true, by one who does not believe it to be true."[46]

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."[47] Layton alleges Defendants knowingly made false representative about the power capabilities of their data centers with the intent to gain new customers.[48] Layton further alleges as a result of this oversubscription, these customers experienced power outages.[49] These allegations of underlying fraud are sufficient to support Layton's 1105(c) claim.

## B.  Wrongful Termination Claim

Wrongful termination in violation of public policy ("wrongful termination") is a California common law cause of action providing that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."[50] This rule recognizes that "an employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes."[51] The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than

---

[46] *Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1488 (9th Cir. 1986) (citations omitted).

[47] *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004) (citing *Lazar v. Superior Ct.,* 12 Cal. 4th 631, 638 (1996)).

[48] See Docket No. 35 at ¶¶ 15, 20

[49] See Docket No. 35 at ¶ 5.

[50] *Tameny v. Atl. Richfield Co.,* 27 Cal. 3d 167,(1980); *see also Freund v. Nycomed Amersham,* 347 F.3d 752, 758 (9th Cir. 2003); *Green v. Ralee Eng'g Co.,* 19 Cal. 4th 66, 71 (1998) (describing *Tameny* as holding "that at-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy.").

[51] *Green*, 19 Cal. 4th at 71 (citing *Tamney v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980)).

serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental."[52]

Defendants argue Layton fails to state a claim for wrongful termination because he cannot show he was terminated in violation of a substantial public policy.[53] Here, Layton alleges he was wrongfully terminated because he protested and refused to engage in what he believed to be unlawful conduct that violated the public policies underlying §§ 1102.5(a), 1102.5(c), U.S.C. § 3730(h)(1), California Government Code § 12653, and Cal. Civil Code §§ 1709, 1710.[54]

Courts considering wrongful termination claims look "to the public policy evidenced by the *purpose* of various statutes as opposed to a mechanical application of the statutory causes of action on an element-by-element basis"[55] However, the purpose of the provision must be narrowly tailored to reflect the contours of the provision.[56] Any limitations imposed by the statute also apply to limit the purpose extracted from that statute.

---

[52] *Freund,* 347 F.3d at 758 (quoting *City of Moorpark v. Super. Ct.,* 18 Cal. 4th 1143, 1159 (1998)); *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 748-49 (9th Cir. 2011) ("this public policy exception to the at-will employment rule must be based on policies carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." (quoting *Silo v. CHW Med. Found.,* 27 Cal. 4th 1097 (2002)) (internal quotation marks omitted)).

[53] See Docket No. 37 at 13.

[54] *See* Docket No. 35 at ¶ 31.

[55] *Weingand v. Harland Fin. Solutions, Inc.*, Case No. 3:11-cv-3109, 2012 WL 3537035, at *8 (N.D. Cal. 2012).

[56] *See Stevenson v. Superior Court,* 16 Cal. 4th 880, 904 (1997) (Where a plaintiff "relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition.").

11
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1.  **Sections 1102.5(a) and 1102.5(c)**

The purpose of Section 1102.5 is to "encourage workplace whistleblowers to report unlawful acts without fearing retaliation",[57] and it is well established that violations of Section 1102.5 "constitute public policy within the meaning of *Tameny* and its progeny".[58]

Section 1102.5(a) more specifically demonstrates the public policy in protecting whistleblowers reporting to government agencies. Narrowly construed, this section does not express a public policy protecting whistleblowers from reporting internally. Here, Layton fails to plead that he was prevented from reporting the alleged unlawful conduct to government agencies in their regulatory capacity. He therefore cannot rely on this subsection for his wrongful termination claim.

Section 1102.5(c) reflects a public policy of protecting an employee's refusal to participate in unlawful activity. Layton alleges Defendants violated Cal. Civ. Code §§ 1709, 1710 when they deceived their customers into signing contracts by promising a certain level of power capacity, when in fact, they oversubscribed the data centers above industry standards.[59] He also alleges he

---

[57] *Hollie v. Concentra Health Servs., Inc.*, Case No. 4:10-cv-5197-PJH, 2012 WL 993522 (N.D. Cal. Mar. 23, 2012) (citing *Green,* 19 Cal. 4th at 77); *see also Weingand,* 2012 WL 3537035, at *9 (citing *Colllier v. Superior Court*, 228 Cal. App. 3d 1117, 1123 (1991)) (Section 1102.5 "reflects the broad public policy interest in encouraging workplace 'whistleblower,' who may without fear of retaliation report concerns regarding an employer's illegal conduct.").

[58] *Scheu v. Charter Commc'ns, LLC,* Case No. 08–cv–02835–MMM, 2011 WL 3204672, at *20 (C.D.Cal. July 27, 2011); *see also Ferretti v. Pfizer Inc.,* Case No. 5:11-cv-4486-LHK, 855 F.Supp. 2d 1017, 1023–24 (N.D. Cal. 2012) ("Violations of California Labor Code § 1102.5 can support a common law cause of action for wrongful termination in violation of public policy"); *Casissa v. First Republic Bank*, Case No. 4:09-cv-4129-CW, 2010 WL 2836896, at *2 (N.D. Cal. July 19, 2010).

[59] Defendants argue Plaintiff's complaint merely alleges Layton was terminated for complaining about mere breaches of contract, which is not sufficient to support a wrongful discharge claim. *See* Docket No. 42 at 11. *See also Haney*, 121 Cal. App 4th at 643 n.15 ("[t]his option does not hold, and should not be read to imply, that an employee who is discharged for complaining about breaches of contract committed by the employer is able to state a wrongful discharge claim based on a violation of a substantial and fundamental public policy."). Plaintiff's complaint, however, does not just allege deceit as to already existing customers, but also deceit as to acquiring new customers, which is enough to support Layton's claim that Defendants acted in violation of fundamental public policy. See Docket No. 35 at ¶ 19.

12
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

was terminated for refusing to participate in this activity. Layton thus successfully pleads wrongful termination in violation of the public policy delineated in § 1102.5(c).

### 2.     31 U.S.C. § 3730(h)(1) and California Government Code § 12653

Layton does not allege retaliation under the False Claims Act. Rather, Layton is basing his wrongful termination claim on the public policy delineated in the Act, specifically Title 31 United States Code § 3730(h)(1) and California Government Code § 12653.[60] To establish his claim for wrongful termination in violation of the public policies embodied in the FCA and CFCA, Layton must allege facts similar to those that would be required for a retaliation claim.[61] "Unlike a FCA violation claim, a FCA retaliation claim "does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)".[62] Instead, "a FCA retaliation claim must meet the Rule 8(a) notice pleading standard."[63] "Under Rule 8(a), the plaintiff must give the defendant fair notice of what the claim is and the grounds upon which it rests."[64] Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.[65]

---

[60] 31 U.S.C. § 3730(h)(1) provides: "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

[61] *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 (9th Cir. 2008) (finding the same facts alleged to support Plaintiff's retaliation claims also support Plaintiff's claim for wrongful termination in violation of the public policies embodied in the FCA and CFCA) (citing *Haney v. Aramark Unif. Servs., Inc.,* 121 Cal. App. 4th 623 (2004)).

[62] *Mendiondo*, 521 F.3d at 1103.

[63] *Id.*

[64] *Id.* at 1104 (internal quotations and citations omitted).

[65] *Id.* (citing *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

13
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

"A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity."[66]

"As is clear from the elements of the claim, an employer does not face liability for the suspected or actual fraud; it faces liability for a retaliatory act against the investigating employee. The emphasis of the claim is on the employee's protected action and whether the employer retaliated against the employee because of that action. The fact that the claim arises from an investigation of potential fraud does not alter its nature as a retaliation claim."[67]

"'[P]rotected activity' under Section 3730(h) may be found where a plaintiff reasonably believed that [his] employer, or a related third party, was possibly committing fraud against the government."[68]  As discussed above, Layton alleges sufficient facts to establish a prima facie case for retaliation.  Layton specifically alleges he reasonably believed Defendants were committing fraud against the government by making false representations to government customers regarding oversubscription of power in the data centers,[69] and his refusal to participate was the basis for his termination.[70]  Layton therefore also pleads facts sufficient to support his wrongful termination claim based on violations of public policies delineated in the FCA and CFCA.

---

[66] *Id.* at 1103 (citing *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.,* 275 F.3d 838, 845 (9th Cir.2002); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir. 1996)).

[67] *Mendiondo*, 521 F.3d at 1103.

[68] *Hill v. Booz Allen Hamilton, Inc.*, Case No. 07-cv-00034, 2009 WL 1620403, at *5 (D. Guam June 9, 2009) (citing *U.S. ex rel. Satalich v. City of Los Angeles*, 160 F. Supp. 2d 1092, 1108 (C.D. Cal. 2001)).

[69] *See* Docket No. 35 at ¶¶ 15, 18, and 38.

[70] *See id.* at ¶ 31.

C.  **Defamation Claim**

Layton alleges a cause of action for defamation, based upon statements made about him in his termination letter.[71] To state a claim for defamation, a plaintiff must allege "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."[72]

1.  **Publication**

"Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the 'public' at large; communication to a single individual is sufficient."[73]

Defendants argue Layton failed to allege publication of defamatory statements with the requisite specificity.[74] Layton, however, does allege Defendants made defamatory statements via its Vice-President of Platform Operation in Layton's December 17, 2012 termination letter.[75] Layton alleges the letter was published to eight specific individuals and included accusations that he failed to protect tangible and intangible property, failed to handle company funds responsibly, and failed to be honest and forthcoming in a company investigation.[76] The court finds these allegations sufficient to put Defendants on notice as to which statements are at issue.

---

[71] *See* Docket No. 35 at ¶ 46.

[72] *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citing 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782, citing Civ. Code, §§ 45–46 and cases)).

[73] *Hernandez v. First Student, Inc.*, Case No. 10-cv-8243-SVW-FMOX, 2010 WL 5313293, at *3 (C.D. Cal. Dec. 16, 2010) (citing *Smith v. Maldonado,* 72 Cal. App. 4th 637, 645 (1999)).

[74] *See* Docket No. 37 at 18-20.

[75] *See* Docket No. 35 at ¶ 46.

[76] *See* Docket No. 35 at ¶¶ 46 and 47. Although these alleged statements are not in quotations indicating verbatim statements, as Defendants argue is required, this level of specificity is sufficient to put Defendants on notice of which statements are at issue.

15
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

### 2. False Statements of Fact

The alleged defamatory statements must be false and therefore also statements of fact, not merely expressions of opinion.[77] "The dispositive question is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion."[78] Generally, "performance evaluations are statements of opinion" and thus cannot support a defamation claim.[79] Layton alleges, however, the termination letter is not merely a statement of opinion because it accuses him of failing to protect property, failing to handle funds responsibly, and failing to be honest in an investigation. These statements of fact are provable at trial; they accuse Layton of lack of integrity, dishonesty, and incompetence, which are sufficient to support his cause of action.[80]

### 3. Defamatory and Natural Tendency to Injure

"If a statement falls within Cal. Civ. Code § 46(1)-(4), it is considered defamatory per se."[81] Section (3) provides a publication is slander if it tends directly to injure the person "in respect to his office, profession, trade or business".[82] Layton alleges these statements were false and injurious to his reputation, especially because they imputed to him general disqualification in those

---

[77] *Id.* (citing *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 604 (1976)); *Reese v. Barton Healthcare Sys.*, 606 F. Supp. 2d 1254, 1263 (E.D. Cal. 2008) (citing *Tschirky v. Superior Court,* 124 Cal. App. 3d 534, 539 (1981)) (A statement of opinion "cannot be false and is outside the meaning of libel.").

[78] *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970 (1993) (citations and quotations omitted).

[79] *Reese v. Barton Healthcare Sys.*, 606 F. Supp. 2d 1254, 1263-64 (E.D. Cal. 2008) (citing *Campanelli v. Regents,* 44 Cal. App. 4th 572, 578 (1996)).

[80] See *Jensen,* 14 Cal. App. 4th at 965 ("[U]nless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics, it cannot support a cause of action for libel.").

[81] *Crowe v. Cnty. of San Diego,* 608 F.3d 406, 442 (9th Cir. 2010).

[82] Cal. Civ. Code § 46(3).

16
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

respects which his occupation peculiarly requires.[83]  The alleged statements made in the termination letter are thus defamatory per se.

### 4. Unprivileged

Defendant argues the alleged defamatory statements are privileged under Cal. Civ. Code § 47(c) because the termination letter was made to other employees who were interested persons.[84]  Subsection (c) defines as privileged a publication that is made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested."[85]

"This qualified privilege generally covers an employer's communication of the cause of an employee's discharge to other employees, when the employer is seeking its own self-interest and is acting in good faith."[86]  Although Layton alleges generally that the statements were non-privileged, he does not provide sufficient factual support for this allegation because the statements at issue are contained in the termination letter, which was a communication of the cause of Layton's discharge to other employees.  The termination letter is thus a privileged statement.

To state a claim for defamation where a qualified privilege applies, a complaint "must contain affirmative allegations of malice in fact."[87]  General allegations of malice are not sufficient to overcome this privilege; Layton must "specifically allege malice with detailed facts showing

---

[83] *See* Docket No. 35 at ¶ 46.

[84] *See* Docket No. 37 at 22.

[85] Cal. Civ.Code § 47(c) (2012).

[86] *Jones v. Lehigh Sw. Cement Co., Inc.*, Case No. 1:12-cv-633-AWI/JLT, 2012 WL 2934530, at *5 (E.D. Cal. July 18, 2012) (citing *Deaile v. Gen. Tel. Co. of Cal.,* 40 Cal. App. 3d 841, 849 (2d Dist. 1974); *see also Cuenca v. Safeway S.F. Employees Fed. Credit Union,* 180 Cal. App. 3d 985, 995 (1986) ("Communications ... relating to the conduct of an employee have been held to fall squarely within the qualified privilege for communications to interested persons.")).

[87] *Lundquist v. Reusser,* 7 Cal. 4th 1193 (1994) (internal quotation marks and citation omitted).

17
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

defendant's ill will toward him."[88] Layton alleges Defendants made these statements with malice in retaliation for his complaints, thus providing factual support for Defendants' ill will and pleading sufficient facts to overcome the privilege.[89]

**D.     Violation of California Labor Code §§ 2698, 2699 (PAGA)**

The California legislature enacted Private Attorney General Act to "allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations" when the labor law enforcement agencies could not keep pace with the growth of the labor market.[90] Under PAGA, an aggrieved employee must first notify the Labor and Workforce Development Agency of the alleged labor code violations.[91] If the LWDA elects not to investigate, the aggrieved employee may bring a civil action against an employer "on behalf of himself or herself and other current or former employees."[92] If the employee's claim is successful, 75% of the penalties recovered go to the LWDA, and the remaining 25% go to the aggrieved employees.[93]

"The PAGA, Cal. Labor Code §§ 2698–2699.5, applies to violations of California Labor Code § 1102.5."[94] Layton sent the requisite notice to the LWDA and received a response that the LWDA will not investigate the matter.[95] The parties agree the Layton's claims under PAGA are entirely derivative of his Labor Code Claims. Because the court denies Terremark's motion to

---

[88] *Conwright v. City of Oakland*, Case No. 3:09-cv-2572-TEH, 2010 WL 3515741, at *6 (N.D. Cal. Sept. 8, 2010) (citing *Robomatic, Inc. v. Vetco Offshore,* 225 Cal. App. 3d 270, 276 (1990)) (quotations omitted).

[89] *See* Docket No. 35 at ¶ 48.

[90] *Arias v. Superior Court,* 46 Cal. 4th 969, 980 (2009).

[91] Cal. Lab. Code § 2699.3

[92] Cal. Lab. Code § 2699(a); § 2699.3(a)(2)(A).

[93] Cal. Lab. Code § 2699(i).

[94] *See Tomco v. Prada USA Corp.*, 484 F. App'x 99, 100 (9th Cir. 2012) (citing Cal. Lab. Code § 2699.5).

[95] *See* Docket No. 35 at ¶ 58.

18
Case No. 5:13-cv-03093-PSG
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

dismiss the bulk of those claims, the court also DENIES Terremark's motion to dismiss the PAGA claims.[96]

### IV. CONCLUSION

Defendants' motion to dismiss Plaintiff's Second Amended Complaint is DENIED as to all four causes of action. A separate scheduling order will issue.

**IT IS SO ORDERED.**

Dated: June 5, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[96] *See Tomco,* 484 F. App'x at 100 ("Because we affirm the district court's grant of summary judgment on Tomco's § 1102.5 retaliation claim, her PAGA claim is necessarily defeated.").